## COBB v. CATER.

1. EVIDENCE—MALICE.—Upon the issue of malice, after party admits that he is on bad terms with another, he cannot be asked as to special collateral acts of bad humor.

2. POISON—DAMAGES.—A man may put out poison anywhere on his own premises to protect them from prowling animals or varmints, if he have due regard to the safety of human life; but if he puts it out with intent to kill his neighbor's animals, he is liable. *Divided Court.*

Before WATTS, J., Anderson, February, 1900.　Affirmed.

Action for damages for poisoning a setter dog by C. E.

Cobb and W. H. Humphreys against A. P. Cater.    From judgment for defendant, plaintiffs appeal.

*Messrs. Bonham & Watkins* and *Tribble & Prince,* for appellant.    The former cite: *Malice may be shown from acts:* 15 S. C., 413; 2 Rich., 179.    *Dogs are property:* 54 S. C., 481; 55 S. C., 322.    *As to right of one to put out poison:* 35 Am. Dec., 96; 141 Mass., 179.

*Messrs. Quattlebaum & Cochran,* contra.    *Mr. Ernest F. Cochran,* cites: *Killing dogs not subject to same rule as other animals:* 10 Rich. L., 52; 33 S. E. R., 466; 100 Mass., 136; 6 Pa. St., 318; 24 Ill. App., 270; 53 N. H., 399; 14 Tex. Ct. App., 200; 11 Lea., 528; 23 Wend., 354; 31 Conn., 121; 4 Cow., 151; 9 Johns., 233.    *No liability if trespassing dog gets poison:* 34 J. P., 406; 70 Tex., 670; 20 Ia., 378; 1 Cow., 78.

March 12, 1901.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    This was an action for damages for killing a pointer dog of the value of $100, belonging to plaintiffs, by poison alleged to have been administered to him by defendant, on or about the 18th December, 1899.    There were two causes of action—the first was for actual and the second for punitive damages.    In the first cause of action, it is alleged that the defendant, "without any just or lawful excuse administered poison to said dog."    In the second cause of action, it is alleged that the defendant administered poison to said dog, "wilfully, unlawfully and maliciously, and with intent to damage and injure said plaintiffs."    The defendant in his answer to the complaint denied each and every allegation therein contained, and set up the following defense:

"1. That the defendant for some time prior to the time mentioned in the complaint had been very much harassed and annoyed by dogs and other predatory animals prowling about his premises at night, destroying eggs and chickens,

tearing up his garden, coming into his kitchen and committing various other acts of depredation, thereby becoming a common nuisance; but defendant was unable to capture the said dogs or predatory animals, or to prevent them from coming on his premises or committing the acts of depredation aforesaid.

"2. That defendant did not know to whom the said dogs and predatory animals belonged, or that they were owned or claimed by any one.

"3. That finding himself unable to stop the said depredations, the defendant, in order to protect his property and save the same from destruction, and in order to abate the nuisance and annoyance above mentioned, placed a small portion of poison on his own premises and near his kitchen; but as to whether plaintiffs' dog ate the said poison or not, defendant says he has no knowledge or information sufficient to form a belief.

"4. That defendant had no intention or desire to injure plaintiffs' or any dogs owned or claimed by them, but acted solely with a view to the protection of his property; and defendant avers that his acts as above set forth in this answer were necessary in order to save his property from destruction and to secure himself quiet and peaceable enjoyment of his premises."

The appellants' first exception is as follows: "First. Because his Honor erred in refusing to allow the plaintiff, C. E. Cobb, to answer the question propounded by his counsel: 'Now have you had other differences with him (defendant)?' and in refusing to allow defendant to answer question of plaintiffs' counsel: 'You shot some of Mr. Cobb's chickens over there, didn't you?' Such questions being intended to bring out the state of feeling existing between plaintiffs and defendant, and the malice with which the poisoning was done, as alleged in the second cause of action; and his Honor having subsequently charged the jury, 'That if you think that the defendant poisoned the dog and he was prompted by malice, and did it as spite work,

or by malice, or by his not liking the plaintiffs, the jury could give in addition to such actual damages that the plaintiffs have sustained such damages in the way of punishment as you may think he has suffered.' " The first question was asked after the defendant had closed his testimony and when the witness was being examined in reply. In sustaining the objection to the second question, his Honor said, "The defendant admits he is on bad terms with Mr. Cobb." The only tendency of the testimony which the plaintiffs desired to elicit by the foregoing questions would have been to show the state of feeling existing between the defendant and the plaintiff, Cobb; and as the defendant admitted that he was on bad terms with Cobb, there was no necessity for further testimony to show this fact. Furthermore, there was no testimony whatever that the defendant knew the plaintiffs' dog had been upon his premises. This exception is overruled.

It will not be necessary to consider the other exceptions in detail, as they all assign error to his Honor, the presiding Judge, in stating the law as to the right of a person to put out poison on his premises for the protection of his property from prowling animals. The record contains the following statement: "After being out for some time, the jury returned to the Court room for further instructions. The Court asked the foreman whether the jury's difficulty was one of law or of fact, to which the foreman replied, 'we wish to know what you charged in reference to how near his dwelling a man may put the poison on his own premises?' In response to this inquiry, the Court charged that a man has a right to put out poison anywhere on his premises to protect them from the ravages or depredations of dogs, minks or other preying varmints, if he has due regard to the safety of human life; that he must have due care and exercise due caution not to injure human life; and if he puts out poison to protect his property, and a dog invades his premises and gets the poison, under such circumstances the owner would not be liable for damages; but if he

30—59

puts out poison, not for the protection of his property, but with the intent to kill his neighbor's dog, then he would be liable for damages." The respondent's attorneys thus stated in their argument the substance of the charge on this subject: "The charge was substantially that a man had a right to put poison on his premises for the protection of his property, having a due regard for the safety of human life, and that if a neighbor's dog came trespassing and got the poison, the defendant would not be liable. He further said that if he placed the poison out, *not to protect his property,* but with the intention to kill his neighbor's dog, then he would be liable." There is a familiar and wholesome maxim of law, *"sic utere tuo ut alienum non laedas."* When a person puts out poison on his premises, he knows that the natural—indeed, the intended—result is to destroy his neighbor's animals. Knowing and intending such to be the result, he should be guided by reason and prudence in thus destroying the property of others. The presiding Judge did not charge that a person had an absolute right to put out poison on his premises, but that it was to be exercised with limitations which he stated. The rule which the law prescribes is that a person exercising the right to put out poison on his premises shall act with such care as might reasonably be expected of a man possessing ordinary prudence under like circumstances. The fact that the animal at the time it eats the poison may have been prowling or trespassing, is a circumstance to be considered by the jury in determining whether the person placing the poison acted with ordinary prudence; but the Court cannot charge without invading the province of the jury, that this circumstance was sufficient to enable them to find a verdict in favor of the defendant. The charge of the presiding Judge was not in accord with the rule hereinbefore stated, and was, therefore, erroneous, in my opinion.

The members of this Court are, however, equally divided in opinion, and the judgment of the Circuit Court is affirmed.

MR. JONES *concurs.*

MR. CHIEF JUSTICE McIVER. *I dissent upon two grounds.* 1st. Because I think the rule of law applicable to this case as laid down by the Circuit Judge is correct. 2d. Even if it is not, because of its failure to include other limitations than those stated by the Circuit Judge, then it was the duty of the appellants to submit a request to charge such other limitations, and this they failed to do. The well settled doctrine of this Court being, as I understand it, that if a party desires a more extended charge than that delivered on a given point, he must submit a request to that effect. See *State* v. *Kendall*, 54 S. C., 192.

MR. JUSTICE POPE. *I dissent.* The Circuit Judge stated the correct rule.